IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREW GOESEL, et al., etc.,         )
                                     )
                Plaintiffs,           )
                                     )
    v.                                )    No. 09 C 4595
                                     )
BOLEY INTERNATIONAL (H.K.) LTD.,      )
et al.,                               )
                                     )
                Defendants.           )

<u>MEMORANDUM ORDER</u>

Target Corporation and Target Brands, Inc.[1] are codefendants with Boley International (H.K.) Ltd. ("Boley") in this personal injury action brought by Andrew and Christine Goesel ("Goesels"). Goesels have sued both individually and as next friend of their son Cole Goesel, who suffered a serious eye injury when the plastic sword that was part of a toy manufactured by Boley and distributed exclusively by Target shattered into several small and sharp fragments. Target has moved to be dismissed solely from Goesels' Complaint Count II, which sounds in strict liability, and that motion has been briefed by Target and Goesels.

For its part Target points to 735 ILCS 5/2-621,[2] a statute captioned "Product Liability Actions" that focuses narrowly on

---

[1] After this sentence of the text they will be referred to simply as "Target," treated for convenience as a singular noun.

[2] It is undisputed that Illinois law applies in this diversity action.

such actions against non-manufacturer defendants and exculpates them from liability once such an action targets[3] the manufacturer as well.[4] That precondition has of course been satisfied here by Goesels' own decision to have joined Boley as a codefendant. There are only three statutory exceptions to the statute's exculpatory mandate, set out in Act §(c):

> (c) A court shall not enter a dismissal order relative to any certifying defendant or defendants other than the manufacturer even though full compliance with subsection (a) of this section has been made where the plaintiff can show one or more of the following:
>
> > (1) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; or
> >
> > (2) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or
> >
> > (3) That the defendant created the defect in the product which caused the injury, death or damage.

Goesels respond in principal part by seeking to invoke the common law doctrine of "apparent manufacturer," which was announced and applied by the Illinois courts before passage of the Act and which, they say, has survived that enactment. As a

---

[3] Bad pun intended.

[4] All further references to that statute will simply take the form "Act," with no repetition of the ILCS citation--except that specific provisions of the Act will be cited "Act §--," omitting the prefatory 735 ILCS 5/2-621.

fallback position, Goesels also assert that the allegations of their Complaint (treated as true, as Target's motion to dismiss Count II requires) bring them within the shelter provided by Act §(c)(1).

As for Goesels' principal argument, the leading Illinois case articulating the "apparent manufacturer" doctrine is <u>Hebel v. Sherman Equip.</u>, 92 Ill.2d 368, 442 N.E.2d 1999 (1982).[5] Here is a summary description of that doctrine, taken from the post-Act case of <u>Root v. JH Indus., Inc.</u>, 277 Ill.App.3d 502, 506-07, 660 N.E.2d 195, 198 (1st Dist. 1995)(all citations--primarily to the <u>Hebel</u> case--and internal quotation marks omitted):

> Under this doctrine, a company that holds itself out to the public as the manufacturer of a product is liable for the injuries caused by that product if it is found to be unreasonably dangerous. The primary rationale for imposing liability on the apparent manufacturer of a defective product is that it has induced the purchasing public to believe that it is the actual manufacturer, and to act on this belief-that is, to purchase the product in reliance on the apparent manufacturer's reputation and skill in making it. It is thus apparent that whether a holding out has occurred must be judged from the viewpoint of the purchasing public and in light of circumstances as of the time of purchase. This rationale has also been extended to the nonpurchasing public. Another justification is where a defendant puts out a product as its own and the purchaser has no means of ascertaining the identity of the true manufacturer. Thus, it would be fair to impose liability on the party whose actions effectively conceal the true manufacturer's identity.

---

[5] It is worth noting that the Illinois General Assembly enacted the exculpatory statute on which Target relies in the very next year after <u>Hebel</u> was decided.

Because the Illinois Supreme Court has had no occasion to speak to the viability or nonviability of the "apparent manufacturer" doctrine since the enactment of the Act on which Target relies, this Court's role is a predictive one: It must prognosticate how that court would resolve the issue if placed before it.

In that respect, it is true that both Root and Luu v. Kim, 323 Ill.App.3d 946, 752 N.E.2d 547 (1st Dist. 2001)(an opinion authored by the late Justice William Cousins, who had also written the panel opinion in Root) postdate the Act and analyze those cases by looking at the facts to see whether they would qualify for "apparent manufacturer" treatment. But in each instance the circumstances of the case were totally different from those posed by the present case, and in each instance the plaintiff's claims against the nonmanufacturer defendant were rejected. Root, the only one of those cases that had occasion to speak of the Act at all, did so only in the context that the plaintiffs there had dealt with the subject in alternative terms, unsuccessfully urging an estoppel doctrine based on defendant's asserted noncompliance with the Act's disclosure provisions.

This Court has exercised its required predictive role, and it holds that the Illinois Supreme Court would find that the statutory provisions of the Act have trumped the earlier judge-made doctrine and have defined the sole predicate for the

4

potential imposition of strict liability on a nonmanufacturer. It is not simply that enactment of the Act came hard on the heels of the <u>Hebel</u> decision. Far more significant than the obvious potential inference of a cause-and-effect relationship between the <u>Hebel</u> decision and adoption of the Act is the very nature of the Act itself:

> 1. Act §(c) has substituted an express and limited set of standards that may prevent exculpation for the more amorphous analysis that had been called for by the judge-made doctrine as to what induces the public to believe that a nonmanufacturer is instead the manufacturer, and to act on that belief.[6]
>
> 2. <u>Hebel</u>'s last-quoted justification for indulging the fiction of an "apparent manufacturer" is eliminated by the Act's express requirement that the true manufacturer must be disclosed and actually sued before the nonmanufacturer can get out of the case.

In sum, ordinary principles of statutory construction call for taking the Illinois General Assembly at its word and treating the statute as establishing the preemptive criteria for a nonmanufacturer's strict liability or for the negation of such

---

[6] It would be bizarre indeed to view a comprehensive later legislative treatment of a subject, such as that embodied in the Act, as somehow overridden by earlier caselaw setting out different standards for the same subject matter.

5

strict liability.  That then calls for a look at Goesels' Complaint in terms of the Act--a task that may be accomplished in far briefer compass.  On that score Goesels attempt to point only to the exception set out in Act §(c)(1), not contending that Act §§(c)(2) and (3) play any role here.

To begin with, there is no question that Goesels know that Boley was the actual manufacturer of the toy that caused the injury to their son:  Complaint ¶¶10-11, 13-14, 37-38, 57-58 and 73 say that again and again.  And nothing in Goesels' Complaint states (even with the aid of reasonable favorable inferences) that Target was the (or even a) manufacturer of the toy or of any of its components.  Instead the sole allegation that bears on any putative manufacturer status is Complaint ¶47:

> Target and/or DBI held itself out as the apparent manufacturer of the Robot.

But that purely conclusory statement must be viewed as ineffective, because Goesels' own factual allegations (which again are accepted by this Court for purposes of the present motion) directly render that conclusion wholly nonplausible, thus flunking the current Twombly-Iqbal pleading test.

On that score Goesels distort the exculpation exception in Act §(c)(1), to the extent that it is applicable where "the defendant has exercised some significant control over the design or manufacture of the product," by asserting at their Mem. 6:

> Within their Complaint, the Goesels allege facts

6

> demonstrating that Target exercised significant control
> over the design and manufacture of the toy robot by
> purposefully selecting the toy robot from a variety of
> available products to sell as Target's own product.

That is just wrong, for Goesels themselves have expressly acknowledged that the Boley product was already designed and manufactured <u>without</u> any input from Target at the time that Target selected the completed product for sale in its stores.[7] And the rest of Goesels' assertions at their Mem. 6-7 are even more ill-fitting in terms of the Act, going instead to Goesels' surviving claims against Target (see n.7). Finally, that is equally true of Goesels' Mem. 8, an unsuccessful attempted bootstrapping of the second alternative in Act §(c)(1).

## Conclusion

Goesels have pleaded themselves out of court as to any potential strict liability on Target's part. Goesels themselves refer to the Act as the "Distributor Statute" (see their Mem. 1), and Complaint ¶18 expressly alleges:

> The packaging for the Walking Robot states that it is
> "Distributed by Target corporation, Minneapolis, MN"
> and is sold under the copyright of "Target Brands, Inc.
> All Rights Reserved" and directs the purchaser to "Shop
> Target.com."

Common parlance of course recognizes the distinction between

---

[7] It should be emphasized at this point that Target has not sought to extricate itself from this lawsuit in its entirety--it has answered Counts IV (which sounds in asserted negligence on Target's part) and VI (which asserts a breach of the implied warranty of merchantability).

manufacturing and distributing a product, so that the quoted allegation creates no reasonable inference that Target was the product's manufacturer--indeed, exactly the opposite is the case. And of course none of the arguments advanced by Goesels succeeds in moving Target from distributor status to that of the manufacturer. Target's motion is granted.

                                                _____
                                                Milton I. Shadur
                                                Senior United States District Judge

Date:  October 20, 2009