IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW GOESEL AND CHRISTINE GOESEL, individually and as next friend to COLE GOESEL, a minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 09 C 4595 |
| BOLEY INTERNATIONAL (H.K.) LTD.; BROADWAY TOYS INDUSTRIES LTD.; FOSHAN SHUNDE DISTRICT NA WEI PLASTIC & HARDWARE CO., LTD.; and TARGET CORPORATION, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This memorandum opinion and order is the second of two opinions dealing with the parties' motions in limine in this action ( "Opinion I," issued two days ago, addressed plaintiffs' 13 motions). To provide a brief background so that this opinion addressing defendants' 11 motions (respectively cited "D. No. --") can be self-contained, the opening paragraph of Opinion I is repeated here:

> This action seeks to recover damages sustained by then five year old Cole Goesel ("Cole") when a plastic toy sword that he was playing with -- part of a toy product known as the "Boley Cosmic Robot" -- shattered and a piece of that sword pierced Cole's eye. After discovery was closed, this Court approved and entered the jointly submitted final pretrial order ("FPTO") on June 21, 2012, and the litigants adhered to the schedule provided there for the submission of motions in limine by tendering a host of such motions -- 13 by plaintiffs (cited simply "P. No. --") and 11 by defendants.

That said, this Court turns to defendants' motions.

D. No. 1 seeks to keep out of the case the opinions of economist David Gibson ("Gibson") "because they are unlikely and/or speculative." It should be said at the outset that this Court need not repeat the teaching as to opinion witnesses set out in the seminal opinions in Daubert v. Merrell Dow Pharms, Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) -- as Opinion I and its attached Appendix reflect, this Court (then a member and later the Chairman of the Judicial Conference's Advisory Committee on the Rules of Evidence) was the principal coauthor for that Committee of both Fed. R. Evid. ("Evid. R.") 702 and its accompanying Advisory Committee Note. By definition, then, this Court is intimately familiar with the standards established by that Rule and that Note and with what they require. Although defense counsel has rehearsed the operative principles again and again, both in the responses to plaintiffs' motions in limine and in support of defendants' own, nothing is gained in analytical terms by such repetition.

To turn directly to defendants' criticism of Gibson's opinions, their counsel urges that Gibson produced two dramatically different reports in the space of three months. But like too many of defendants' positions, that one is really bogus. As economist Gibson explained in his February 21, 2012 forwarding letter that accompanied his second set of much higher figures:

> The updated loss of earning capacity sustained by Cole Goesel is in a range of $1,010,276 to $1,378,950, stated in terms of present value. Enclosed is our report on your client. The updated figures are based on data from the 2008-2010 American Community Survey that were tabulated since our original report. This data offers more reliable information in regards to employment statistics for persons with visual limitations. This report is meant to replace our original report dated November 17, 2011.

Accordingly D. No. 1 is denied. Defense counsel will of course have the opportunity to cross examine Gibson and to seek to impeach his testimony by calling his first opinion into play.

D. No. 2 attempts another knockout blow, this time by seeking to preclude the testimony of Duane Priddy, Ph.D. ("Priddy") as unreliable. But Opinion I, in the course of granting P. No. 1, provided a preview of coming attractions in that regard. Unlike defendants' opinion witness Bert Reiner, who purported to opine -- without any predicate or foundation for doing so, other than his own unsupported sayso -- on the type of plastic of which the sword that injured Cole and the sample swords tested by Dr. Priddy were manufactured, impeccably credentialed organic chemist Dr. Priddy provided ample support for his opinion both in his report and in his deposition.

Hence D. No. 2 is also denied. This Court should not be misunderstood, of course, as somehow vouching for the conclusion reached by Dr. Priddy -- that is a matter for the trier of fact to resolve. Once again cross examination will be available to defense counsel to attempt to persuade the jury to disbelieve Dr. Priddy.

D. No. 3 continues the defense's onslaught on plaintiffs' opinion witnesses, this time challenging ophthalmologist Andrew Dahl on the premise that his opinions "are too speculative." That could be a legitimate objection in areas in which the standards for a credentialed witness' opinion are "to a reasonable degree of certainty" or an even more stringent test as to a specific matter. But here the very nature of Dr. Dahl's testimony is to identify potential future risks to Cole's eyesight -- matters that by their nature cannot be quantified in terms of probability (especially where, as here, the subject of the opinions is just a ten-year-old).

Dr. Dahl properly does not claim to have a crystal ball[1] as to the complications that Cole may encounter because of his already-sustained injury. Because Dr. Dahl is entirely forthright in the nature of his assessment, there is no danger that the trier of fact will overweigh it. Once more

---

[1] No pun is intended here, let alone a bad one.

defense counsel has cross examination available as a proper line of attack -- but defendants are not entitled to exclude the witness entirely, so that D. No. 3 is denied as well.[2]

D. No. 4 shifts gears, moving from the subject of opinion witnesses to a contention that a plaintiff should be barred from referring to defendants' financial and corporate status. In that respect defendants urge that any such references should not be a means of "inflam[ing] any prejudice which the jury might have against corporations" or "to arouse sympathy and passion and to encourage larger verdicts" by reason "of the presumed wealth of such parties."

Those concerns are legitimate, but plaintiffs' response rightfully suggests that the better course is to avoid a generic ruling now in favor of dealing with specific questions in the context of trial. Accordingly D. No. 4 is denied in its unbounded form, with the subject to be addressed as it may arise during the course of trial. For that purpose plaintiffs' counsel will be required to identify, from time to time during the trial, any proposed reference to the challenged subjects <u>before</u> embarking on that path.

D. No. 5 asks that any reference to liability insurance carried by Boley and Target[3] should be barred. Although plaintiffs' response says that they "currently do not intend to offer evidence of Target's or Boley's insurance," their counsel suggests the denial of D. No. 5 so that any potential of considering such evidence can be ruled upon "as the need arises at trial." Under the circumstances, however, this Court opts for granting D. No. 5, with any partial reconsideration of the motion to be considered if, as and when the issue does arise at trial.

---

[2] Indeed, Dr. Dahl's report found "to a reasonable degree of medical certainty" that in consequence of his injury Cole faces the increased risks in the areas that Dr. Dahl identified.

[3] This opinion carries forward the shorthand references to defendants that were adopted in Opinion I.

D. No. 6 is one that sounds plausible -- "barring lay witness medical opinions" -- but does not survive scrutiny under closer examination. That problem, of course, stems in large part from the undefined term "medical opinions." Surely Cole himself cannot be precluded from testifying about what he has experienced and is experiencing, testimony likely to implicate his opinions that might be classified as "medical." And the same holds true as to his parents' testimony as to what they have observed (note in addition that his mother is a registered nurse and his father is licensed as a chiropractor). In this instance, unlike D. No. 5, the preferable course is to deny D. No. 6, with any possible specific individual rulings on this issue to be made if, as and when the occasion presents itself at trial.

D. No. 7 returns to the subject of opinion witnesses, this time challenging the stated opinions of plaintiffs' witness Timothy Pine ("Pine," referred to by plaintiffs as their "toy safety expert") "to the extent they assume facts not in evidence." First, plaintiffs' response at 1.n.1 confirms what is <u>not</u> embraced within that challenge:

> Mr. Pine also has opined that the Cosmic Robot's sword was defective and did not comply with federal and industry safety standards. Defendants do not attack this opinion in any way and thus Mr. Pine, at a minimum, should be allowed to testify at trial with respect to these issues.

As for the substance of what the motion <u>does</u> address, defense counsel's brief and sketchy statement in purported support of the motion fails in the face of the careful and detailed multipage sections of plaintiffs' response captioned "Introduction" and "Background Facts," which sections are then followed by this opening statement in the "Argument" portion of that response:

> Evidence should be excluded *in limine* only when it is clearly inadmissible on all potential grounds. *Alexian Bros. Health Providers Assoc. v. Humana Health Plan, Inc.*, 608 F.Supp.2d 1018, 1021 (N.D. Ill. 2009). "If that 'high standard' is not met, 'evidentiary rulings should be deferred until trial so that questions of

foundation, relevancy and potential prejudice may be resolved in proper context.'" *Id.* With respect to expert testimony, rejection of such testimony by the trial court "is the exception rather than the rule" and the "trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* at 1025; *see also Dewick v. Maytag Corp.*, 324 F.Supp.2d 894, 899 (N.D. Ill. 2004) (trial cour tis "to be a gatekeeper, not a roadblock").[4]

In candor, defense counsel's attack on Pine's opinion testimony as "assuming facts not in evidence" is a total mischaracterization. Plaintiffs' counsel have responded persuasively that Pine's statement of his opinions fits snugly within the criteria for their admissibility, and here too defense counsel must content themselves with the opportunity for cross examination as the means to bring the trier of fact to their own point of view. D. No. 7 is also denied.

D. No. 8 asks that plaintiffs be precluded from asking the jury whether it is willing to award millions of dollars in damages and from suggesting an appropriate recovery for Cole. Unsurprisingly, that motion occupies something less than a page and is supported by no caselaw authority at all -- only Evid. R. 401-403 are mentioned.

For their part plaintiffs' counsel cite a group of cases that uniformly consider such questioning to be totally legitimate, and this Court regularly includes among its voir dire questions neutral questioning in that area, including not only such inquiry as to possible big ticket verdicts but, at the other end of the spectrum, inquiring whether if a jury were to find that a plaintiff had not proved his or her case, it would see no problem in rendering a verdict for the defendant even though the plaintiff may have sustained grievous injuries.

This Court sees no potential for prejudice in asking such evenhanded voir dire questions in this area. D. No. 8 is denied.

---

[4] [Footnote by this Court] Both the Alexian Bros. and Dewick opinions were authored by this Court, and it has not changed its perspective on the issues since then.

D. No. 9 asks that plaintiffs' counsel be precluded from referring to a 2006 recall of other plastic Kool Toyz brand[5] toys -- not the Cosmic Robot -- that broke apart, exposing sharp points. Plaintiffs' counsel responds that the recall stemmed from complaints of such breakage and exposure, so that Target voluntarily agreed to such recall and the United States Consumers Product Safety Commission ("Commission") promulgated a news release that the parties have included in the FPTO as a joint exhibit. Defense counsel contends that the release, which stated "Target has received four reports of toys breaking apart, exposing sharp points," is flawed for evidentiary purposes because it did not include any reference to injuries having been sustained. That is of course myopic, because the purpose for which that evidence may be relevant is to show that Target was on notice of potential injuries that should assertedly have led to greater precautions on its part as to the Cosmic Robot.

But apart from the other parties' dispute on the merits, this District Court's standard FPTO form (and the actual FPTO in this case) specifies that any "non-objected-to exhibits are received in evidence by operation of this order." Thus defendants' motion comes too late in the day whether the argument is considered waived or forfeited by the inclusion -- without objection -- of the Commission's release as a joint exhibit. Moreover, no substantive reason appears as to why plaintiffs should be barred from arguing that Target ought to have taken a fresh look at its precautionary measures by having been put on such notice by the problem that triggered the recall, even though plaintiffs' opinion witness Dr. Priddy was unable to determine whether the recalled toys involved crystal polystyrene.

For more than one reason, then, D. No. 9 is denied. As with other motions, defendants'

---

[5] Kool Toyz is Target's generic label for its line of toys.

opportunity for cross examination and arguments in opposition will have to suffice.

D. No. 10, citing Evid. R. 407, seeks to bar evidence of subsequent remedial measures that may have been adopted by Boley or Target or both. Plaintiffs' counsel responds by urging that the evidentiary rule should not apply *if* either of two developments were to take place at trial:

1. Target and Boley might deny that they had control over the sword and its manufacture. That hypothetical possibility may or may not arise, and if it does it could most sensibly be dealt with in the context of trial.

2. D. Exs. 19 to 25, if admitted, might create a situation in which plaintiffs could seek to counter by introducing evidence of such remedial measures. That contingency, however, has been eliminated by this Court's ruling in Opinion I barring the admission of those exhibits.

Accordingly D. No. 10 is granted, subject to the possibility that it may be re-raised only if some conduct at trial on the part of defense counsel calls for a fresh look at the matter.

Finally, D. No. 11 seeks to dismiss Complaint Counts V and VII, asserting that those counts fail to state claims against Boley (the named defendant in Count V) and Target (the named defendant in Count VI). Just how and why it is proper to entertain such a Fed. R. Civ. P. 12(b)(6) motion at this advanced stage of the case is left unexplained. That alone would appear to call for denial of D. No. 11.

But that aside, defendants' argument -- which comes down to the claimed failure of plaintiffs to establish privity of contract with either of their targets -- founders on the rock of

Illinois caselaw. Nearly 40 years ago Berry v. G. D. Searle & Co., 56 Ill. 2d 548, 309 N.E.2d 550 (1974) upheld the right of a consumer (who like Cole had sustained personal injuries) to sue the manufacturer for breach of implied warranty even though plaintiff had not purchased the allegedly defective product from the manufacturer. Accord, such cases as Wheeler v. Sunbelt Tool Co., 181 Ill. App. 3d 1088, 1097-98, 537 N.E.2d 1332, 1339-40 (4th Dist. 1989) and other cases cited there. None of the cases cited by defense counsel as to the general rule regarding claims of implied warranty of merchant ability undercuts the authorities cited by plaintiffs. Hence D. No. 11 is denied.

## Conclusion

None of defendants' motions in limine is granted in full. D. Nos. 1 (Dkt. 102), 2 (Dkt. 103), 3 (Dkt. 104), 7 (Dkt. 108), 8 (Dkt. 109), 9 (Dkt. 110) and 11 (Dkt. 112) are denied. Defendants' remaining four motions are presently ruled on as follows, subject to possible revisiting at the time of trial:

1. D. Nos. 5 (Dkt. 106) and 10 (Dkt. 111) are granted.

2. D. Nos. 4 (Dkt. 105) and 6 (Dkt. 107) are denied.

                                      Milton I. Shadur
                                      Senior United States District Judge

Date: October 26, 2012