# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ANDREW GOESEL**, et al., etc., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 09 C 4595 |
| ) | |
| **BOLEY INTERNATIONAL (H.K.) LTD.**, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This personal injury lawsuit, with federal subject matter jurisdiction having been based on diversity of citizenship, has settled. Plaintiffs are the parents of the injured person, a 5-year-old child who sustained injury because a plastic toy sword shattered due to the brittle nature of the plastic, with a shard piercing the child's right eye. Because the real party in interest is a minor, both Illinois law (as plaintiffs' counsel acknowledged) and this District Court's LR 17.1 require that the settlement must receive this Court's approval.

Every aspect of the reported settlement as between plaintiffs and defendants has been presented impeccably: the settlement amount is well within the range for comparable cases, the extensive time spent by plaintiffs' counsel in the hard-fought battle in preparation for an anticipated trial was justified and all other criteria established by the caselaw were well met. Instead any problem in approving the settlement on the terms proposed by plaintiffs' counsel stems not from the relationships between plaintiffs and defendants in preparing and then settling the case, but rather in the relationship between plaintiffs and their lawyers -- a subject that calls for determining the portion of the reasonable settlement proceeds that should appropriately go to

each.  And on that score the question comes down to whether the out-of-pocket expenses -- in this instance a very high figure due primarily to the amounts paid to professional opinion witnesses, whose competing analyses and conclusions were expected to provide the battleground for the proverbial battle of experts when the case went to trial -- should be taken off the top <u>before</u> the lawyers' one-third contingent fee would be calculated or, instead, had to be borne entirely by the plaintiffs <u>after</u> the one-third fee was calculated and paid to plaintiffs' counsel based on the gross dollars produced by the settlement.

Because the litigants wish the amount of the settlement to remain confidential, this opinion will not quantify the difference in dollars occasioned by those competing alternatives. Suffice it to say that the out-of-pocket expenses -- as already stated, by far the major part of which comprise payments to the opinion witnesses -- bulk so large in the total picture that if counsel's position were to be accepted the funds to be placed into a special account for the minor's benefit would amount to only about 40% of the gross amount that defendants have agreed to pay (with the lawyers' 33-1/3% plus the expenses, which total nearly 27%, adding up to the other 60%).

To be sure, plaintiffs' counsel says (and this Court credits his representation) that the result plumped for by counsel is called for by the terms of the retainer agreement, and under ordinary circumstances this Court would find that the sanctity of contracts calls for approval of that outcome.  But in that respect one aspect of the lawyer-client relationship that is rarely thought about, and even more rarely talked about, bears serious consideration:  the inherent inequality of bargaining power as between lawyer and client in the initial discussion in which fees are agreed upon.

Except for the circumstance in which a prospective client is itself a business that already has house counsel, we do not of course expect prospective clients in legal matters to obtain separate counsel to enable them to negotiate the contractual terms of their retainers with their prospective trial counsel. Thus the situation reeks with irony -- a layperson who proposes to engage a fiduciary must rely on that prospective fiduciary's self-dealing definition of the financial terms of their relationship.[1] And now, after the fact, a judge must determine the fairness of the financial arrangement because the parents were acting as fiduciaries for their minor child in accepting what was essentially a contract of adhesion prepared by counsel.

At the time that the proposed settlement here was first tendered to this Court for consideration, it raised the question of what should be taken off the top first in dividing up the settlement proceeds. Its general understanding, based on hearsay information derived from a threshold inquiry, was that the norm in such situations was for expenses to be deducted first, with the one-third fee then to be calculated on the net rather than the gross amount of the settlement. This Court therefore asked plaintiffs' counsel to consider the question and to return after having thought about it.

That inquiry resulted in counsel's submission of a half-inch-thick document -- just as thick as, and virtually identical to, the original submission, but with minor changes such as the insertion of the following sentence at page 3 (the dollar figure has been omitted because of counsel's request for confidentiality):

---

[1] True enough, the chances are that if you inquire of the typical layperson about contingent fees, the answer is likely to be "one-third." But when it comes to fine-tuning, when the question becomes "one-third of what?", few strangers to the litigation process are likely to have thought about that.

> Further, the portion of the settlement proceeds which Cole [the minor child] will receive after payment of attorney's fees and expenses, [    ], is sufficient to not only cover any future medical needs but is also sufficient to compensate him for his pain and suffering.

At the next status hearing this Court singled out that sentence and remarked on the inappropriateness of counsel's subjective comment on the asserted value of the minor child's pain and suffering. Remember that the defendants have been willing to pay in settlement a very large multiple of the "specials" -- medical expenses of some $55,000 -- and that such willingness reflects an obvious recognition of the highly sympathetic picture presented by the injured minor and of a jury's likely substantial award for the intangible harms that are commonly encompassed under the "pain and suffering" rubric. And we can be sure that if the case had gone to trial, plaintiffs' counsel would have been arguing strenuously for a big-ticket figure for that intangible component of a damages award (just as plaintiffs' counsel no doubt urged vigorously in the negotiation that ultimately led to the settlement figure).

Although not really responding on that score, plaintiffs' counsel pointed out that his law firm had advanced the sums for the opinion witnesses' fees, risking nonrecovery if the lawsuit were unsuccessful. True enough, but this Court then pointed out that a contingent fee arrangement in a major case inherently involves a substantially greater risk for counsel -- the uncompensated economic loss, if the plaintiff loses the case, of the very large amount of lawyers' time that had been invested in the litigation (time is of course the attorney's stock in trade, for it is <u>the</u> commodity that a lawyer has for sale).

It is thus a conceptual mistake to think of risking out-of-pocket costs differently than the risk of opportunity costs in contingent fee arrangements. <u>Both</u> are at risk of nonrecovery if

plaintiff loses the case -- hard dollars are no different than soft dollars.

In any case, in the interim since that status hearing this Court has learned through further inquiry that the terms in contingent fee arrangements are not of a one-size-fits-all nature in the respect now in question: Some law firms use an expenses-off-the-top approach, while others employ agreements of the type used by counsel here. Indeed, Illinois' Rule of Professional Conduct that addresses contingent fees (RPC 1.5(c)) requires that a contingent fee agreement must be in writing signed by the client and must state, among other things, whether "litigation and other expenses to be deducted from the recovery . . . are to be deducted before or after the contingent fee is calculated."

From that perspective and given that provision, counsel's request in this case certainly cannot be characterized as per se unreasonable. If the situation here had been that of an adult reaching an agreement of the kind proposed by counsel where his or her own lawsuit and possible recovery were at issue, this Court might have permitted freedom of contract considerations to override what might seem to be an imbalance in sharing the net proceeds of settlement. But in this instance this Court has determined, in the exercise of its discretionary function as a proxy for the minor plaintiff, that fairness and right reason call for the approval of all aspects of the proposed settlement arrangements except that the lawyer's fee calculation will amount to one-third of the net settlement figure (the gross proceeds paid by defendants less out-of-pocket expenses).[2]

---

[2] There is one other minor exception. One substantial item that counsel had included in the list of expenses was "Legal Research" -- a term denoting the cost of electronic research such as LEXIS or Westlaw. But the very nature of a contingent fee agreement is that the lawyers' time spent in research as well as on all other aspects of the litigation are paid for by the contingent fee,

(continued...)

As stated earlier, the litigants' request for confidentiality of the financial aspects of the settlement, respected by this Court, call for the issuance of a separate order -- to be filed under seal -- that quantifies those arrangements. This memorandum opinion and order has been issued to explain the predicate for this Court's decision in that respect. Accordingly the only order included in this opinion is one that (1) approves the agreed-upon settlement as in the best interests of the minor child who sustained the injury and (2) directs that the separate order that sets out the agreed-upon settlement figure and its distribution is to be a contemporaneously issued memorandum order to be filed under seal.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 29, 2013

---

²(...continued)
not on an hourly rate basis. Electronic research that cuts down on a lawyer's expenditure of his or her more tedious research time is no more separately compensable than the lawyer's research time with the books.